UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| JEROME REID, on behalf of himself and others similarly situated, | : : : : : : : : : : : : : : | **Civil Action No.:** <br><br> **COMPLAINT--CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |
| Plaintiff, | | |
| v. | | |
| ALLIED REVENUE SERVICES, LLC d/b/a ALLIED BUSINESS SERVICES, | | |
| Defendant. | | |

**Nature of Action**

1. This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, for the benefit of Michigan consumers who have been the subject of debt collection efforts by Allied Revenue Services, LLC d/b/a Allied Business Services ("Defendant").

2. Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3. As the Consumer Financial Protection Bureau ("CFPB")—the federal agency tasked with enforcing the FDCPA—explained, "[h]armful debt collection practices remain a

significant concern today. In fact, the CFPB receives more consumer complaints about debt collection practices than about any other issue."[1]

4.  This case centers on Defendant's threats to take action that it could not legally take, in violation of the FDCPA's restrictions.

**Parties**

5.  Jerome Reid ("Plaintiff") is a natural person who at all relevant times resided in Newaygo County, Michigan.

6.  Plaintiff is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

7.  Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a medical bill allegedly owed to Spectrum Health (the "Debt").

8.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

9.  Defendant is a limited liability company with its principal office in Ottawa County, Michigan.

10. Defendant is "one of the largest licensed collection agencies in Michigan."[2]

11. Defendant is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

---

[1]   *See* Brief for the CFPB as Amicus Curiae, Dkt. No. 14, p. 10, *Hernandez v. Williams, Zinman, & Parham, P.C.*, No. 14-15672 (9th Cir. Aug. 20, 2014), http://www.ftc.gov/system/files/documents/amicus_briefs/hernandez-v.williams-zinman-parham-p.c./140821briefhernandez1.pdf (last accessed January 21, 2019).

[2]   *See* https://www.abscollect.com/about/ (last accessed January 21, 2020).

12. Upon information and belief, at the time Defendant attempted to collect the Debt from Plaintiff, the Debt was in default, or Defendant treated the Debt as if it were in default from the time that Defendant acquired it for collection.

13. Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

14. Defendant held itself out to Plaintiff as a debt collector.

15. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## Jurisdiction and Venue

16. This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

17. Venue is proper before this Court under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims occurred in this district, and as Defendant has its principal place of business in this district.

## Factual Allegations

18. On or about October 28, 2019, Defendant sent a written communication to Plaintiff in connection with the collection of the Debt.

19. A true and correct copy of the October 28, 2019 communication to Plaintiff is attached as Exhibit A.

20. The October 28, 2019 communication to Plaintiff was the first communication Plaintiff received from Defendant.

21. Plaintiff did not receive any other communication from Defendant within five days of the October 28, 2019 communication.

22. The October 28, 2019 communication advised Plaintiff that he owed $32.24 to Spectrum Health. *Id*.

23. The October 28, 2019 communication further advised Plaintiff in bold letters that the communication was "**from a debt collector**" and was "**an attempt to collect a debt.**" *Id*.

24. Additionally, the October 28, 2019 communication advised Plaintiff to "**PLEASE SEE THE REVERSE SIDE FOR ADDITIONAL INFORMATION.**" *Id*.

25. On the reverse side of the October 28, 2019 communication, under a heading titled "**Non-payment**," the October 28, 2019 communication advised Plaintiff:

> In the event that the account balance is not paid within 120 days from the date the balance was deemed the responsibility of the patient and the account is not set up on a formal payment plan, the account will be referred to a collection agency. If your account is referred to a collections agency, collections actions may include placing a lien on a patient's property, attaching or seizing a bank account or other personal property, commencing a civil action, garnishing a patient's wages or reporting adverse information to a consumer reporting agency of credit bureau. If any of these collection actions are started, they will begin no earlier than 30 days from the date of this billing statement. Please see the full policy for complete details.

*Id.*

## Class Action Allegations

26. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of:

> All persons (a) with a Michigan address, (b) to whom Allied Revenue Services, LLC d/b/a Allied Business Services mailed an initial debt collection communication not known to be returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that stated:
>
>> "In the event that the account balance is not paid within 120 days from the date the balance was deemed the responsibility of the patient and the account is not set up on a formal payment plan, the account will be referred to a collection agency. If your account is referred to a collections agency, collections actions may include placing a lien on a patient's property, attaching or seizing a bank account or other personal property, commencing a civil action,

>garnishing a patient's wages or reporting adverse information to a consumer reporting agency of credit bureau. If any of these collection actions are started, they will begin no earlier than 30 days from the date of this billing statement. Please see the full policy for complete details."

27. Excluded from the class is Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had controlling interests.

28. The class satisfies Rule 23(a)(1) because, upon information and belief, it is so numerous that joinder of all members is impracticable.

29. The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

30. The class is ascertainable because it is defined by reference to objective criteria.

31. In addition, upon information and belief, the names and addresses of all members of the class can be identified in business records maintained by Defendant.

32. The class satisfies Rules 23(a)(2) and (3) because Plaintiff's claims are typical of the claims of the members of the class.

33. To be sure, Plaintiff's claims and those of the members of the class originate from the same standardized initial debt collection letter utilized by Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the class.

34. Plaintiff satisfies Rule 23(a)(4) because he will fairly and adequately protect the interests of the members of the class and has retained counsel experienced and competent in class action litigation.

35. Plaintiff has no interests that are contrary to or in conflict with the members of the class that he seeks to represent.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since, upon information and belief, joinder of all members is impracticable.

37. Furthermore, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation could make it impracticable for the members of the class to individually redress the wrongs done to them.

38. There should not be any unusual difficulty in the management of this action as a class action.

39. Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the class.

40. Among the issues of law and fact common to the class are:

   a. Defendant's violations of the FDCPA as alleged herein;

   b. whether Defendant is a debt collector as defined by the FDCPA;

   c. the availability of statutory penalties; and

   d. the availability of attorneys' fees and costs.

### Count I: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e

41. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 40.

42. The FDCPA at 15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

43. Defendant's October 28, 2019 communication threatens Plaintiff that if the account balance is not paid within 120 days from when it was deemed the responsibility of the patient, he may face collections actions, including the (1) placement of a lien on his property, (2) attachment or seizure of his bank account or other personal property, (3) commencement of a civil action, (4) garnishment of his wages, *or* (5) reporting of adverse information to a consumer reporting agency of credit bureau. *See* Ex. A.

44. An ordinary reading of the threat set forth in Defendant's October 28, 2019 communication leads to the conclusion that Plaintiff may face the placement of a lien on his property, the attachment or seizure of his bank account or other personal property, or the garnishment of his wages, *even absent the commencement of a civil action*.

45. But neither Defendant nor any other collection agency or the creditor can legally place a lien on Plaintiff's property, attach or seize his bank account or other personal property, or garnish his wages, prior to obtaining a judgment for the Debt following the commencement of a civil action.

46. Moreover, Defendant's October 28, 2019 communication advised Plaintiff that if the account balance was not paid within 120 days from when it was deemed the responsibility of the patient, the account would be referred to a collection agency. *See* Ex. A.

47. At the same time Defendant held itself out to Plaintiff to be a "debt collector." *Id.*

48. Thus, the letter falsely implies to the least sophisticated consumer that a debt collector is different from a collection agency, and that Defendant is not a collection agency. *See, e.g., Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1131–32 (W.D. Wis.), on reconsideration, 339 F. Supp. 2d 1064 (W.D. Wis. 2004) ("15 U.S.C. § 1692e(5) prohibits debt collectors from threatening to take action 'that is not intended to be taken.' In other words, the

section is guarding against empty threats intended only to scare a debtor. In defendant's first collection letter to plaintiffs, defendant stated that it would forward the debt to a 'collection agency.' However, defendant had sent the balance to a collection agency before it sent the letter. It is difficult to understand why defendant would want to send plaintiffs' debt to a collection agency twice. I view defendant's action as an empty threat and conclude that it violated 15 U.S.C. § 1692e(5).")

49. As a result, Defendant violated 15 U.S.C. § 1692e by using several false, deceptive, and misleading representations in connection with the collection of the Debt.

50. The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally and regarded his personal alleged debt.

51. And the content of Defendant's October 28, 2019 communication created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA.

52. Specifically, when a debt collector threatens to take an action it cannot legally take, the consumer is left uncertain as to his or her rights and under the impression that the debt collector's threats are supported by law.

53. And that risk manifested itself here, as Plaintiff believed after reviewing Defendant's October 28, 2019 communication that the law allowed Defendant, another collection agency, or the creditor, to place a lien on his property, attach or seize his bank account or other personal property, or garnish his wages, all without filing a lawsuit against him.

54. Moreover, since the October 28, 2019 communication does not state the date on which the debt was deemed the responsibility of the patient, Plaintiff reasonably believed that Defendant, another collection agency, or the creditor, might place a lien on his property or attach

or seize his bank account or other personal property after 30 days had elapsed from the date on the October 28, 2019 letter.

55. Thus, upon reviewing the threats, Plaintiff, who is disabled and has social security as his sole income, suffered significant stress and anxiety at the idea that he may face the placement of a lien on his property or the attachment or seizure of his bank account or other personal property, even absent the commencement of a civil action, in less than 30 days.

56. Plaintiff was therefore at a materially greater risk of falling victim to abusive debt collection practices.

57. As a result, Plaintiff was forced to consult with counsel to understand his rights and what acts the law allowed Defendant, another collection agency, or the creditor to carry out with regard to his money and property.

### Count II: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(4)

58. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 40.

59. The FDCPA at 15 U.S.C. § 1692e(4) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

60. Defendant's October 28, 2019 communication threatens Plaintiff that if the account balance is not paid within 120 days from when it was deemed the responsibility of the patient, he may face collections actions, including the (1) placement of a lien on his property, (2) attachment

or seizure of his bank account or other personal property, (3) commencement of a civil action, (4) garnishment of his wages, *or* (5) the reporting of adverse information to a consumer reporting agency of credit bureau. *See* Ex. A.

61. An ordinary reading of the threat set forth in Defendant's October 28, 2019 communication leads to the conclusion that Plaintiff may face the placement of a lien on his property, the attachment or seizure of his bank account or other personal property, or the garnishment of his wages, *even absent the commencement of a civil action*.

62. But neither Defendant nor any other collection agency or the creditor can legally place a lien on Plaintiff's property, attach or seize his bank account or other personal property, or garnish his wages, prior to obtaining a judgment for the Debt following the commencement of a civil action.

63. As a result, Defendant violated 15 U.S.C. § 1692e(4) by threatening and implying in its October 28, 2019 communication that nonpayment of the Debt could result in the garnishment of Plaintiff's wages and attachment of his property, even absent the commencement of a civil action, even though it would be unlawful for Defendant, any other collection agency, or the creditor to garnish Plaintiff's wages, or attach or seize his property, before first commencing a civil action and obtaining a judgment on the Debt.

64. The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally and regarded his personal alleged debt.

65. And the content of Defendant's October 28, 2019 communication created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA.

66. Specifically, when a debt collector threatens to take an action it cannot legally take, the consumer is left uncertain as to his or her rights and under the impression that the debt collector's threats are supported by law.

67. And that risk manifested itself here, as Plaintiff believed after reviewing Defendant's October 28, 2019 communication that the law allowed Defendant, another collection agency, or the creditor, to place a lien on his property, attach or seize his bank account or other personal property, or garnish his wages, all without filing a lawsuit against him.

68. Moreover, since the October 28, 2019 communication does not state the date on which the debt was deemed the responsibility of the patient, Plaintiff reasonably believed that Defendant, another collection agency, or the creditor, might place a lien on his property or attach or seize his bank account or other personal property after 30 days had elapsed from the date on the October 28, 2019 letter.

69. Thus, upon reviewing the threats, Plaintiff, who is disabled and has social security as his sole income, suffered significant stress and anxiety at the idea that he may face the placement of a lien on his property or the attachment or seizure of his bank account or other personal property, even absent the commencement of a civil action, in less than 30 days.

70. Plaintiff was therefore at a materially greater risk of falling victim to abusive debt collection practices.

71. As a result, Plaintiff was forced to consult with counsel to understand his rights and what acts the law allowed Defendant, another collection agency, or the creditor to carry out with regard to his money and property.

**Count III: Violation of the Fair Debt Collection Practices Act,**
**15 U.S.C. § 1692e(5)**

72.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 40.

73.     The FDCPA at 15 U.S.C. § 1692e(5) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

74.     Defendant's October 28, 2019 communication threatens Plaintiff that if the account balance is not paid within 120 days from when it was deemed the responsibility of the patient, he may face collections actions, including the (1) placement of a lien on his property, (2) attachment or seizure of his bank account or other personal property, (3) commencement of a civil action, (4) garnishment of his wages, *or* (5) reporting of adverse information to a consumer reporting agency of credit bureau. *See* Ex. A.

75.     An ordinary reading of the threat set forth in Defendant's October 28, 2019 communication leads to the conclusion that Plaintiff may face the placement of a lien on his property, the attachment or seizure of his bank account or other personal property, or the garnishment of his wages, *even absent the commencement of a civil action*.

76.     But neither Defendant nor any other collection agency or the creditor can legally place a lien on Plaintiff's property, attach or seize his bank account or other personal property, or garnish his wages, prior to obtaining a judgment for the Debt following the commencement of a civil action.

77. Moreover, Defendant's October 28, 2019 communication advised Plaintiff that if the account balance was not paid within 120 days from when it was deemed the responsibility of the patient, the account would be referred to a collection agency. *See* Ex. A.

78. At the same time Defendant held itself out to Plaintiff to be a "debt collector." *Id.*

79. Thus, the letter falsely implies to the least sophisticated consumer that a debt collector is different from a collection agency, and that Defendant is not a collection agency. *See, e.g., Berndt*, 337 F. Supp. 2d at 1131–32 (W.D. Wis.).

80. As a result, Defendant violated 15 U.S.C. § 1692e(5) by threatening in its October 28, 2019 communication that nonpayment of the Debt could result in the placement of a lien on his property, the attachment or seizure of his bank account or other personal property, or the garnishment of his wages, even absent the commencement of a civil action, even though it would be unlawful for Defendant, any other collection agency, or the creditor to undertake such actions before first commencing a civil action and obtaining a judgment on the Debt.

81. The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally and regarded his personal alleged debt.

82. And the content of Defendant's October 28, 2019 communication created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA.

83. Specifically, when a debt collector threatens to take an action it cannot legally take, the consumer is left uncertain as to his or her rights and under the impression that the debt collector's threats are supported by law.

84. And that risk manifested itself here, as Plaintiff believed after reviewing Defendant's October 28, 2019 communication that the law allowed Defendant, another collection

13

agency, or the creditor, to place a lien on his property, attach or seize his bank account or other personal property, or garnish of his wages, all without filing a lawsuit against him.

85. Moreover, since the October 28, 2019 communication does not state the date on which the debt was deemed the responsibility of the patient, Plaintiff reasonably believed that Defendant, another collection agency, or the creditor, might place a lien on his property or attach or seize his bank account or other personal property after 30 days had elapsed from the date on the October 28, 2019 letter.

86. Thus, upon reviewing the threats, Plaintiff, who is disabled and has social security as his sole income, suffered significant stress and anxiety at the idea that he may face the placement of a lien on his property or the attachment or seizure of his bank account or other personal property, even absent the commencement of a civil action, in less than 30 days.

87. Plaintiff was therefore at a materially greater risk of falling victim to abusive debt collection practices.

88. As a result, Plaintiff was forced to consult with counsel to understand his rights and what acts the law allowed Defendant, another collection agency, and the creditor to carry out with regard to his money and property.

**WHEREFORE**, Plaintiff respectfully requests relief and judgment as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Adjudging and declaring that Defendant violated 15 U.S.C. §§ 1692e, 1692e(4) and 1692e(5);

C. Awarding Plaintiff and members of the class statutory damages pursuant to 15 U.S.C. § 1692k;

D. Awarding Plaintiff and members of the class actual damages incurred, as applicable, pursuant to 15 U.S.C. § 1692k;

E. Enjoining Defendant from future violations of 15 U.S.C. §§ 1692e, 1692e(4) and 1692e(5) with respect to Plaintiff and the class;

F. Awarding Plaintiff and members of the class their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k and Rule 23 of the Federal Rules of Civil Procedure;

G. Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

H. Awarding other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff is entitled to, and hereby demands, a trial by jury.

Dated:  January 30, 2020                    Respectfully submitted,

/s/ *Michael L. Greenwald*
Michael L. Greenwald
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
mgreenwald@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*

Andrew L. Campbell, Attorney at Law
1000 Beach Street, Suite B West Entrance
Flint, MI 48502
Phone: (810) 232-4344
michiganbk@gmail.com

*Local Counsel for Plaintiff and the proposed class*